BETSY C. MANIFOLD (SBN 182450)
RACHELE R. BYRD (SBN 190634)
MARISA C. LIVESAY (SBN 223247)
BRITTANY N. DEJONG (SBN 258766)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

*Attorneys for Plaintiff*

[Additional Counsel on Signature Page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELAINE WANG,<br><br>           Plaintiff,<br><br> v.<br><br>PORTOLA PHARMACEUTICALS INC., HOLLINGS C. RENTON, JEFFREY BIRD, M.D., PH.D., LAURA BREGE, DENNIS FENTON, PH.D., SCOTT GARLAND, JOHN H. JOHNSON, TED LOVE, M.D., DAVID C. STUMP, M.D., and H. WARD WOLF,<br><br>           Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Elaine Wang ("Plaintiff"), by her attorneys, makes the following allegations against Portola Pharmaceuticals Inc. (sometimes referred to herein as "Portola" or the "Company") and the members of the board of directors of Portola (the "Board" or "Individual Defendants," along with Portola, collectively referred to as the "Defendants"), for their violations of Sections 14(e), 14(d) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(e), 78n(d), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100, in connection with the proposed acquisition (the "Proposed Transaction") of Portola by affiliates of Alexion Pharmaceuticals, Inc. ("Alexion").  The allegations in this complaint are based on the personal knowledge of Plaintiff as to herself and on information and belief (including the investigation of counsel and review of publicly available information) as to all other matters stated herein.

## INTRODUCTION

1.     This is an action brought by Plaintiff against Portola and the members of the Portola board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Portola by affiliates of Alexion.

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Solicitation Statement on Schedule 14D-9 (the "Solicitation Statement") to be filed on May 27, 2020 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Solicitation Statement recommends that Company stockholders tender their shares in support of a proposed transaction whereby Portola will be acquired by Alexion through its wholly-owned subsidiary Odyssey Merger Sub Inc.  (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement"), each Portola common share issued and outstanding will be converted into the right to receive $18.00 per share in cash (the "Merger Consideration"). In accordance with the Merger Agreement, Merger Sub

1    commenced a tender offer to acquire all of Portola's outstanding common stock and will expire on

2    July 1, 2020.

3          3.       Defendants have now asked Portola's stockholders to support the Proposed

4    Transaction based upon the materially incomplete and misleading representations and information

5    contained in the Solicitation Statement, in violation of Sections 14(e), 14(d), and 20(a) of the

6    Exchange Act.   Specifically, the Solicitation Statement contains materially incomplete and

7    misleading information concerning, among other things, (i) Portola's financial projections relied

8    upon by the Company's financial advisor, Centerview Partners LLC ("Centerview") in its financial

9    analyses; and (ii) the data and inputs underlying the financial valuation analyses that support the

10   fairness opinions provided by Centerview. The failure to adequately disclose such material

11   information constitutes a violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act as Portola

12   stockholders need such information in order to tender their shares in support of the Proposed

13   Transaction.

14          4.       It is imperative that the material information that has been omitted from the

15   Solicitation Statement is disclosed to the Company's stockholders prior to the expiration of the

16   tender offer.

17          5.       For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants

18   from taking any steps to consummate the Proposed Transaction unless and until the material

19   information discussed below is disclosed to Portola's stockholders or, in the event the Proposed

20   Transaction is consummated, to recover damages resulting from the Defendants' violations of the

21   Exchange Act.

22                              **JURISDICTION AND VENUE**

23

24          6.       This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act

25   (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations

26   of Sections 14(e), 14(d), and 20(a) of the Exchange Act and SEC Rule 14a-9.

27          7.       Personal jurisdiction exists over each Defendant either because each is an individual

28   who is either present in this District for jurisdictional purposes or has sufficient minimum contacts

---

with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Portola is headquartered in this District.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of Portola common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Hollings C. Renton has served as a member of the Board since March 2010 and is the Chairman of the Board.

11.     Individual Defendant Jeffrey Bird, M.D., Ph.D. has served as a member of the Board since November 2003.

12.     Individual Defendant Laura Brege has served as a member of the Board since January 2015.

13.     Individual Defendant Dennis Fenton, Ph.D. has served as a member of the Board since February 2015.

14.     Individual Defendant Scott Garland is the Company's President and Chief Executive Officer and has been a member of the Board since October 2018.

15.     Individual Defendant John H. Johnson has served as a member of the Board since March 2014.

16.     Individual Defendant Ted Love, M.D. has served as member of the Board since September 2019.

17.     Individual Defendant David C. Stump, M.D. has served as member of the Board since September 2015.

18.     Individual Defendant H. Ward Wolff has served as member of the Board since November 2007.

19.     Defendant Portola is incorporated in Delaware and maintains its principal offices at 270 E. Grand Avenue, South San Francisco, CA 94080. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "PTLA."

20.     The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21.     The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

22.     Portola, a biopharmaceutical company, develops and commercializes novel therapeutics in the areas of thrombosis, and other hematologic disorders and inflammation in Europe and the United States. Its lead product, Andexxa, is an antidote for the treatment of rivaroxaban and apixaban under the Ondexxya Brand. The Company offers Bevyxxa (betrixaban), an oral, once-daily Factor Xa inhibitor for the prevention of venous thromboembolism in adult patients for an acute medical illness.  It also develops cerdulatinib, an investigational oral, dual spleen tyrosine kinase, and janus kinases inhibitor for the treatment of hematologic cancers, and Syk inhibitors.  Portola has collaboration agreements with Bristol-Myers Squibb, Pfizer Inc., Daiichi Sankyo, Inc., Bayer Pharma, AG, Takeda, Ora, Inc., Astellas Pharma Inc., and Janssen Pharmaceuticals, Inc. The Company was founded in 2003 and is headquartered in South San Francisco, California.

23.     On May 5, 2020, the Company and Alexion jointly announced the Proposed Transaction:

> BOSTON & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.

---

COMPLAINT FOR VIOLATIONS OF SECTIONS 14(e), 14(d) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.

Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.

RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.

24.     It is therefore imperative that Portola's stockholders are provided with the material information that has been omitted from the Solicitation Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests.

**B.     The Materially Incomplete and Misleading Solicitation Statement**

25.     On May 27, 2020, Portola filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.  The Solicitation Statement was furnished to the Company's stockholders and solicits the stockholders to tender their shares in support of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Solicitation Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Solicitation Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to tender their shares, in violation of Sections 14(e), 14(d), and 20(a) of the Exchange Act.

26.     The Solicitation Statement fails to provide material information concerning financial projections by Portola management. The Solicitation Statement discloses management-prepared financial projections for the Company which are materially misleading. The Solicitation Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts, including the Initial Long-Term Plan and the Updated Long-Term Plan (the "Projections") and provided them to the Board and Centerview with forming a view about the stand-alone valuation of the Company. *See* Solicitation Statement at 29.  Accordingly, the Solicitation Statement should have, but fails to provide, certain information in the projections that Portola management provided to the Board and Centerview. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007).

27.     For the Projections, the Solicitation Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2020 through 2032: (a)

EBIT and (b) Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Solicitation Statement at 30. Specifically, the Solicitation Statement fails to disclose how management's stock-based compensation was calculated to derive the EBIT figures, and, specifically, whether stock-based compensation was treated as a cash or non-cash expense. This is especially crucial with respect to smaller technology companies, where stock based compensation can account for a large portion of compensation. If the anticipated stock based compensation expense was added back into the Discounted Cash Flows Analysis, if originally treated as a cash expense by Portola, this would lead to a significant increase in the value coming from the Discounted Cash Flows Analysis. This omission is material because without this information, Portola's public shareholders are unable to fully understand the analysis and, thus, are unable to determine what weight, if any, to place on the fairness opinion in determining whether to tender their shares. Also omitted from the Projections are management's extrapolations for Unlevered Free Cash Flow for years 2020 through 2032.

28.    With respect to Centerview's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2032 at a rate of free cash flow decline between 30% to 20% year-over-year; and (ii) the individual inputs and assumptions underlying the range of discount rates from 9.5% to 11.5%. Solicitation Statement at 37.

29.    With respect to Centerview's analysis of stock price targets, the Solicitation Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources for the price targets.

30.    With respect to Centerview's analysis of premiums paid in the transactions analyzed in the *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose those premiums observed by Centerview in the analysis.

31.    In sum, the omission of the above-referenced information renders statements in the Solicitation Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the expiration of the Tender Offer,

Plaintiff will be unable to make a fully-informed decision regarding whether to tender her shares, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I
### Violations of Section 14(e) of the Exchange Act
### (Against All Defendants)

32.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

33.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . ." 15 U.S.C. § 78n(e).

34.     Defendants violated Section 14(e) of the Exchange Act by issuing the Solicitation Statement in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, in conjunction with the Tender Offer. Defendants knew or recklessly disregarded that the Solicitation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

35.     The Solicitation Statement was prepared, reviewed and/or disseminated by Defendants. It misrepresented and/or omitted material facts, including material information about the consideration offered to stockholders via the Tender Offer, the intrinsic value of the Company, the Company's financial projections, and the financial advisor's valuation analyses and resultant fairness opinion.

36.     In so doing, Defendants made untrue statements of material fact and omitted material information necessary to make the statements that were made not misleading in violation of Section 14(e) of the Exchange Act. By virtue of their positions within the Company and/or roles in the process and in the preparation of the Solicitation Statement, Defendants were aware of this information and their obligation to disclose this information in the Solicitation Statement.

37.     The omissions and misleading statements in the Solicitation Statement are material in that a reasonable stockholder would consider them important in deciding whether to tender their shares or seek appraisal. In addition, a reasonable investor would view the information identified above which has been omitted from the Solicitation Statement as altering the "total mix" of information made available to stockholders.

38.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

39.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff, and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

## COUNT II
### Violations of Section 14(d)(4) of the Exchange Act and
### Rule 14d-9 Promulgated Thereunder
### (Against All Defendants)

40.     Plaintiff repeats and re-alleges each allegation set forth above as if fully set forth herein.

41.     Defendants have caused the Solicitation Statement to be issued with the intention of soliciting stockholder support of the Tender Offer.

42.     Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

43.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which render the Solicitation Statement false and/or misleading.

44.     Defendants knowingly, or with deliberate recklessness, omitted the material information identified above from the Solicitation Statement, causing certain statements therein to be

materially incomplete and therefore misleading. Indeed, while Defendants undoubtedly had access to and/or reviewed the omitted material information in connection with approving the Tender Offer, they allowed it to be omitted from the Solicitation Statement, rendering certain portions of the Solicitation Statement materially incomplete and therefore misleading.

45.     The misrepresentations and omissions in the Solicitation Statement are material to Plaintiff and Plaintiff will be deprived of her entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

**COUNT III**

**Violations of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

46.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Portola, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Portola, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Solicitation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Portola, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Solicitation Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Solicitation Statement.

50.     In addition, as the Solicitation Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Solicitation Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d) and (e), by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Solicitation Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED:  May 28, 2020

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP

By:   /s/ Rachele R. Byrd
BETSY C. MANIFOLD
RACHELE R. BYRD
MARISA C. LIVESAY
BRITTANY N. DEJONG
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
livesay@whafh.com
dejong@whafh.com

Of Counsel:

WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
GLORIA KUI MELWANI
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114

*Counsel for Plaintiff*

*26484